**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SWERVO ENTERTAINMENT GROUP, LLC, a Minnesota limited liability company,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 16-cv-4692** |
| **v.** | ) ) | **Judge John Z. Lee** |
| **LINDA S. MENSCH, an individual, LINDA S. MENSCH, P.C., an Illinois corporation, BRYAN CAVE, LLP, a Missouri limited liability partnership, RSK ENTERPRISES, LLC, a Delaware limited liability company, and ROBERT S. KELLY p/k/a R. Kelly, an individual,** | ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Swervo Entertainment Group, LLC ("Plaintiff") brings suit against Defendants Linda S. Mensch and Linda S. Mensch, P.C. (collectively, "Mensch"), as well as Bryan Cave, LLP ("Bryan Cave"), RSK Enterprises, LLC ("RSK"), and Robert S. Kelly ("R. Kelly"). Plaintiff alleges that while it was in negotiations with RSK and R. Kelly over the terms of a proposed artist tour agreement, Mensch requested an advance deposit in the sum of $500,000 as a gesture of good faith in exchange for continuing negotiations. Negotiations eventually broke down, and the advance deposit was never returned to Plaintiff.

In its Third Amended Complaint, Plaintiff asserts claims for conversion (Count I), fraud in the inducement (Count II), breach of fiduciary duty (Count III), negligence (Count IV), breach of escrow agreement (Count V), unjust enrichment (Count VI), and promissory estoppel (Count VII). Defendants have moved to dismiss the Third Amended Complaint for failure to state a claim to relief pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). They have also

moved to strike Plaintiff's request for attorney's fees. For the reasons stated below, Defendants'

motions to dismiss are granted in part and denied in part, and the motion to strike is granted.[1]

## Factual Background[2]

Plaintiff is a Minnesota limited liability company in the business of promoting and

producing concerts. *See* 3d Am. Compl. ¶ 1, ECF No. 52. Its principal place of business is in

Minnesota, where its sole member resides. *Id.* ¶¶ 1–2. RSK is a Delaware limited liability

company with its principal place of business in Illinois. *Id.* ¶ 10. RSK's sole member is music

artist R. Kelly, a resident of Georgia. *Id.* ¶¶ 11–12. Linda Mensch is an attorney and a resident

of Illinois, and she is the sole shareholder and officer of the Illinois corporation Linda S.

Mensch, P.C. *Id.* ¶¶ 3–5. At all times relevant to this case, Mensch held herself out to be an

attorney of counsel for the law firm Bryan Cave. *Id.* ¶ 18.[3]

In January 2016, Plaintiff began negotiations with RSK and R. Kelly regarding a

proposed artist tour agreement, whereby Plaintiff would receive the exclusive right to promote

and produce certain concerts performed by R. Kelly in exchange for a performance fee. *Id.* ¶ 16.

During these negotiations, RSK and R. Kelly were represented by Mensch. *Id.* ¶ 17.

---

[1]    Mensch, RSK, and R. Kelly are represented by the same counsel and have jointly filed a motion to dismiss the Third Amended Complaint and motion to strike Plaintiff's request for attorney's fees. *See generally* Defs.' Mot. Dismiss, ECF No. 58. Bryan Cave is represented by separate counsel and thus has filed its own motion to dismiss. *See generally* Bryan Cave's Mot. Dismiss, ECF No. 60. Defendants' respective motions raise similar arguments, and the Court therefore addresses them together in this Memorandum Opinion and Order.

[2]    The following facts are taken from Plaintiff's Third Amended Complaint and the exhibits attached thereto, and they are accepted as true on review of Defendants' motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[3]    The Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

Around January 6, 2016, Mensch requested that Plaintiff wire an advance deposit in the sum of $500,000 as a gesture of good faith in exchange for continuing negotiations regarding the terms of the tour agreement. *Id.* ¶ 22. Plaintiff insisted the funds be held in a trust or escrow account and that they not be released until a final tour agreement was executed. *Id.* ¶ 24. On January 13, 2016, Mensch offered an escrow account at Lakeside Bank in Chicago, Illinois, into which Plaintiff could wire the advance deposit. *Id.* ¶ 25. According to Plaintiff, Mensch represented at this time that Defendants would return the advance deposit if the parties did not finalize a tour agreement. *Id.* ¶ 27. Additionally, Mensch represented that Plaintiff retained an absolute and unconditional right to the return of the advance deposit in the event that the parties did not reach a final agreement. *Id.* ¶ 28. On January 15, 2016, relying upon these representations, Plaintiff transferred the $500,000 advance deposit to the escrow account. *Id.* ¶¶ 29–30. The escrow account was entitled "LINDA S. MENSCH, P.C. RSK CLIENT ESCROW ACCOUNT." *Id.* ¶ 30.

On February 5, 2016, Plaintiff sent Mensch a draft of the tour agreement. *Id.* ¶ 33. In this draft, paragraph 4.4 was entitled "Timing of any payments" and included a provision stating: "Advance of Five Hundred Thousand Dollars ($500,000.00) *upon full execution of this Agreement*." *Id.* ¶ 34 (emphasis added); *id.*, Ex. 2. Plaintiff asserts that this version of paragraph 4.4 evinces Mensch's understanding that the advance deposit belonged to Plaintiff at all times prior to execution of a tour agreement. *Id.* ¶ 34.

On February 23, 2016, Mensch sent Plaintiff a new, revised version of the tour agreement. *Id.* ¶ 35. In this version, Mensch had modified paragraph 4.4 so that it read: "Advance of Five Hundred Thousand Dollars ($500,000.00), *acknowledged as received*." *Id.* ¶ 38 (emphasis added); *id.*, Ex. 3. Additionally, Mensch inserted the following language in

paragraph 4.5: "[t]he initial deposit in the amount of $500,000 is hereby acknowledged as received by RSK Enterprises, LLC and all such funds have been authorized by [Plaintiff] to be released from the Linda S. Mensch PC Escrow account." *Id.* ¶ 39; *id.*, Ex. 3. Plaintiff never approved these revisions and did not have an opportunity to review or discuss them with Mensch before she unilaterally inserted them. *Id.* ¶¶ 37, 60.

On March 8, 2016, Plaintiff requested that Mensch return the advance deposit if the parties were unable to finalize the tour agreement by March 11, 2016. *Id.* ¶ 43. Later that day, Mensch left Plaintiff's counsel a voicemail confirming her receipt of this request. *Id.* ¶ 45.

As of March 14, 2016, the parties had not reached a final agreement, so Plaintiff sent written correspondence to Mensch demanding return of the advance deposit. *Id.* ¶ 49. Mensch did not respond to this request or return the advance deposit. *Id.* ¶ 50. On March 18, 2016, Plaintiff sent written correspondence to a managing partner of Bryan Cave's Chicago office, again requesting return of the advance deposit. *Id.* ¶ 51. Bryan Cave denied receiving the advance deposit and further denied having any control over the escrow account. *Id.* ¶ 52. The parties never finalized a tour agreement, but the advance deposit was never returned to Plaintiff. *Id.* ¶¶ 53–54.

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, "[a] plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo*, 526 F.3d at 1081 (internal quotation marks omitted); *see also* Fed R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the

Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inference in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

Additionally, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility, however, "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

When a complaint alleges fraud, the heightened pleading standard set forth in Rule 9(b) applies, rather than the liberal pleading standard of Rule 8(a). *See* Fed. R. Civ. P. 9(b); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 992 (7th Cir. 1991). Under Rule 9(b), a complaint must plead allegations of fraud with particularity. Fed. R. Civ. P. 9(b).

## Analysis

### I. Conversion

In Count I of the Third Amended Complaint, Plaintiff brings a claim of conversion, alleging that Defendants have wrongfully assumed control of Plaintiff's $500,000 advance deposit without authorization. 3d Am. Compl. ¶ 61. In moving to dismiss Count I, Defendants argue that Plaintiff has failed to sufficiently allege the elements of a conversion claim.

To state a claim for conversion under Illinois law, a plaintiff must allege: (1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership of the

plaintiff's property; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to the immediate possession of the property; and (4) a demand for the possession of property. *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 767 (N.D. Ill. 2012) (quoting *General Motors Corp. v. Douglass*, 565 N.E.2d 93, 96–97 (Ill. App. Ct. 1990)).

An asserted right to money generally does not support a claim for conversion under Illinois law. *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002). An exception to this general rule exists where the money at issue is "specific chattel"—that is, "a specific fund or specific money in coin or bills." *Id.* (internal quotation marks omitted). In addition, to prove that its right to the money was absolute and unconditional, the plaintiff must show that "the money claimed, or its equivalent, *at all times* belonged to the plaintiff." *Id.* (emphasis in original) (quoting *In re Thebus*, 483 N.E.2d 1258, 1261 (Ill. 1985)).

Here, the $500,000 advance deposit qualifies as "specific chattel," as the deposit constituted a determinable amount and was segregated in an escrow account. *See DeGeer v. Gillis*, 707 F. Supp. 2d 784, 789 (N.D. Ill. 2010). But Plaintiff's allegations do not indicate that the advance deposit absolutely and unconditionally belonged to Plaintiff at all times. To the contrary, the allegations show that Plaintiff's right to the advance deposit, once it was placed into the escrow account, was explicitly conditioned upon the parties' inability to execute a final tour agreement. *See* 3d Am. Compl. ¶ 28 (emphasis added) ("Mensch agreed that Plaintiff retained an absolute and unconditional right to the return of the Advance Deposit *in the event that* Plaintiff and [RSK and R. Kelly] were unable to successfully negotiate and execute a final Tour Agreement."); *id.* ¶ 61 (emphasis added) ("Plaintiff transferred [the advance deposit] to [Mensch

and Bryan Cave] *on the condition that* the funds be held by them in an escrow account until Plaintiff and [RSK and R. Kelly] executed a final Tour Agreement.").

Because Plaintiff alleges that its right to the return of the advance deposit was subject to a condition, Plaintiff cannot show that this right was absolute and unconditional, and Plaintiff therefore cannot state a claim for conversion. *See Horbach*, 288 F.3d at 977–78 (affirming dismissal of conversion claim under Illinois law where plaintiff's right to return of allegedly converted money was conditional upon defendants' failure to meet certain performance conditions); *DeGeer*, 707 F. Supp. 2d at 789–91 (dismissing conversion claim under Illinois law where plaintiff's right to allegedly converted money was subject to conditions). Accordingly, Defendants' motion to dismiss Count I is granted.[4] Given Plaintiff's allegations regarding the circumstances surrounding the advance deposit's placement into escrow, amendment would likely be futile, and Count I is therefore dismissed with prejudice. *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012).

## II.     Fraud

Count II of Plaintiff's complaint asserts that Mensch, acting as an agent of Bryan Cave, fraudulently represented that the advance deposit would not be released from the escrow account unless the parties executed a final tour agreement. 3d Am. Compl. ¶ 69. In support, Plaintiff alleges that Mensch knew or believed these representations were false at the time they were made. *Id.* ¶ 73. Plaintiff further alleges that Mensch never intended to hold the deposit in the escrow account as promised, as evidenced in part by her unilateral revisions to Plaintiff's proposed tour agreement. *Id.*

---

[4]     Because Defendants' motion to dismiss Count I is granted on the basis that Count I fails to state a claim for conversion, the Court need not address Defendants' alternative argument that Count I is also barred as a matter of law under *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982).

Defendants have moved to dismiss Count II on the ground that Plaintiff has failed to plead fraud with particularity as required by Rule 9(b). Additionally, Defendants argue that Count II is legally insufficient under Illinois law as a claim for promissory fraud. For the reasons explained below, the Court rejects both of these arguments, and Defendants' motion to dismiss Count II is accordingly denied.

## A. Rule 9(b)

Rule 9(b) requires a party pleading fraud in federal court to state with particularity the circumstances constituting the alleged fraud. Fed R. Civ. P. 9(b). This heightened standard "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). "One of the primary purposes of Rule 9(b)'s heightened pleading requirements is to provide notice to the defendants of the claims lodged against them." *United States ex rel. Kalec v. NuWave Monitoring, LLC*, 84 F. Supp. 3d 793, 801 (N.D. Ill. 2015) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994)).

Here, in moving to dismiss Plaintiff's fraud claim, Defendants argue that Plaintiff has failed to sufficiently identify what allegedly fraudulent statements Mensch made, and where and how she made them. This is specious. The complaint specifically identifies what Mensch falsely represented—in particular, that the advance deposit would not be released from the escrow account unless and until the parties executed a final tour agreement. 3d Am. Compl. ¶ 69. It also alleges that this representation was made verbally on January 13, 2016. *Id.* ¶¶ 26–27. And although the complaint does not pinpoint Mensch's location at the time she made the representations, it specifies the location of her place of business (161 North Clark Street, Suite

4300, Chicago, Illinois) as well as the location of the escrow account that was the subject of the alleged fraud (Lakeside Bank in Chicago, Illinois). *Id.* ¶¶ 19, 25. Given these allegations and the nature of this case, the Court concludes that Plaintiff has met the heightened pleading requirements of Rule 9(b).

Defendants further argue that Plaintiff's fraud claim is flawed because Plaintiff has failed to allege to whom the allegedly fraudulent statements were made. To the contrary, however, the complaint clearly states that Mensch made the allegedly fraudulent representations "to Plaintiff." *Id.* ¶ 26. Defendants nevertheless suggest that Plaintiff, as a corporate entity, must offer the name of the specific individual to whom Mensch made her representations. But Defendants have cited no authority in support of this position, and case law suggests that Plaintiff's allegations suffice under Rule 9(b) as they currently stand. *See, e.g.*, *Medscript Pharmacy, LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 793–94 (N.D. Ill. 2015) (holding that plaintiff adequately pleaded fraud with particularity under Rule 9(b) even though plaintiff had not identified the specific individuals to whom the allegedly fraudulent representations were made). Moreover, because Plaintiff is a small limited liability company with only a single member, the universe of specific individuals to whom the representations were likely made is relatively limited, and the complaint thus gives Defendants adequate notice under Rule 9(b) of the nature of the claim against them. *See Kalec*, 84 F. Supp. 3d at 801.

In sum, Plaintiff has complied with Rule 9(b) and adequately identified the "who, what, when, where, and how" of the alleged fraud. The Court therefore denies Defendants' motion to dismiss Count II on this basis.

### B.    Promissory Fraud

Next, Defendants argue that Plaintiff's claim in Count II should be treated as a claim for promissory fraud, even though Plaintiff has labeled it as a claim for fraud in the inducement. Defendants further argue that Plaintiff's claim for promissory fraud must be dismissed on the ground that it is legally insufficient.

Under Illinois law, promissory fraud involves a false statement of intent regarding future conduct, whereas fraud in the inducement involves a false statement of existing or past fact. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012). In other words, a temporal element delineates the two causes of action: representations regarding future conduct generally fall under the doctrine of promissory fraud, whereas statements regarding present or past facts give rise to a claim for fraud in the inducement. *See Triumph Packaging Grp. v. Ward*, 877 F. Supp. 2d 629, 645 (N.D. Ill. 2012) (noting that the "tense" of a statement changes whether a court will consider the statement to be promissory fraud or fraud in the inducement). Where a complaint purports to bring a claim for fraud in the inducement, courts will nevertheless treat the claim as one for promissory fraud if the claim is more accurately characterized as such under state law. *See, e.g.*, *id.* at 644–46; *Naturalock Sols., LLC v. Baxter Healthcare Corp.*, No. 14-CV-10113, 2016 WL 5792377, at *5–6 (N.D. Ill. Oct. 4, 2016); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 682 (Ill. 1989).

Here, the Court agrees with Defendants that Count II of Plaintiff's complaint should be treated as a claim for promissory fraud. Plaintiff alleges that Mensch falsely represented that she and Bryan Cave "*would hold* the Advance Deposit in an escrow account, and *would not release* the funds unless and until Plaintiff and [RSK and R. Kelly] executed a final Tour Agreement." 3d Am. Compl. ¶ 69 (emphasis added). Because these statements described Mensch's *future*

conduct, Illinois law requires the claim in Count II to be treated as a claim for promissory fraud. *Triumph*, 877 F. Supp. 2d at 644–45; *see also Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634, 641 (Ill. 1977) (emphasis added) (interpreting a statement that "the student's potential for the study and practice of medicine *will be evaluated* on the basis of academic achievement" to be a statement regarding future conduct for purposes of fraud claim).

Generally, promissory fraud is unactionable under Illinois law. *Wigod*, 673 F.3d at 570. But Illinois courts recognize a broad exception to this rule where "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *Triumph*, 877 F. Supp. 2d at 645 (quoting *HPI*, 545 N.E.2d at 682); *accord Wigod*, 673 F.3d at 570. To invoke this exception, a plaintiff must allege either "a pattern of fraudulent statements" or "one particularly egregious fraudulent statement." *Wigod*, 673 F.3d at 570 (quoting *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011)). In addition, the plaintiff must point to specific, objective manifestations of the defendant's fraudulent intent not to keep the promise at the time the promise was made. *Id.*; *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992).

Here, Plaintiff has stated a claim for promissory fraud by alleging that Mensch never intended to keep her promise to return the advance deposit. 3d Am. Compl. ¶ 73. Further, Plaintiff supports this claim by alleging specific, objective manifestations of Mensch's fraudulent intent. First, Plaintiff alleges that Mensch broke her promise to return the advance deposit, even though she knew the parties had never reached a final tour agreement and even though Plaintiff had repeatedly requested the deposit's return. *Id.* ¶¶ 23, 43, 49, 51–54. In addition, Plaintiff points to Mensch's revisions to the tour agreement, which she made only after Plaintiff had already placed the advance deposit into the escrow account Mensch had set up. *See id.* ¶¶ 29–30.

In these revisions, Mensch replaced language previously reflecting her promise to return the deposit with new language stating that the advance deposit was "acknowledge as received" and "authorized by [Plaintiff] to be released." *Id.* ¶¶ 38–39. These revisions were made unilaterally and without Plaintiff's knowledge or approval, and Plaintiff had not, in fact, authorized the release of the advance deposit. *Id.* ¶¶ 37, 60.

Taking these allegations in a light most favorable to Plaintiff, the Court finds that the complaint plausibly alleges that Mensch engaged in a fraudulent scheme by intentionally inducing Plaintiff to deposit funds into escrow when she planned to retain the funds regardless of whether the tour agreement was finalized. These allegations suffice to state a claim for promissory fraud under Illinois's "scheme" exception. *See, e.g.*, *Wigod*, 673 F.3d at 570–71 (promissory fraud scheme alleged against mortgage servicer where plaintiff alleged that servicer systematically and intentionally broke promises to mortgagors); *see also Stamatakis Indus., Inc. v. King*, 520 N.E.2d 770, 773 (Ill. App. Ct. 1987) (holding that "protracted negotiations" between the parties were sufficient evidence of a promissory fraud scheme and that "it is a question of fact for the trier of fact to determine the ultimate issue" of fraudulent intent). As such, Defendants' motion to dismiss Count II is denied.

## III.  Breach of Escrow Agreement

In Count V,[5] Plaintiff brings a claim for breach of contract, alleging that Mensch and Bryan Cave breached the terms of their escrow agreement by releasing Plaintiff's money even though Plaintiff never executed a final tour agreement with RSK and R. Kelly. In moving to dismiss this claim, Defendants assert that Illinois's statute of frauds requires all escrow

---

[5]    For reasons that will become clear, the Court finds it useful to consider Plaintiff's claim in Count V before turning to consider the claim in Count III.

agreements to be made in writing. On this basis, Defendants contend that the escrow agreement is unenforceable because Plaintiff has not alleged the existence of a written agreement.

In general, a contract falls under the Illinois statute of frauds if it is a contract (1) with the executor of an estate, (2) to guarantee the debt of another, (3) in consideration of marriage, (4) for a performance that cannot be completed within one year, or (5) for the sale of an interest in land. *See* 740 Ill. Comp. Stat. 80/1, 2. The statute of frauds "function[s] [ ] as an evidentiary safeguard" by requiring contracts falling within its scope to be in writing in order to be enforceable. *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1351 (Ill. 1997); *see also Gideon Serv. Div. v. Dunham-Bush, Inc.*, 400 N.E.2d 89, 91 (Ill. App. Ct. 1980) ("A statute of frauds is designed to prevent perjury and fraud in enforcing parol contracts.").

Illinois courts have held that where the subject matter underlying an escrow agreement falls within the statute of frauds, the escrow agreement must be in writing. *See, e.g.*, *R & B Kapital Dev., LLC v. N. Shore Cmty. Bank & Trust Co.*, 832 N.E.2d 246, 253 (Ill. App. Ct. 2005) (holding that statute of frauds in Illinois Credit Agreements Act governed escrow agreement for construction loan proceeds where the escrow agreement qualified as a "credit agreement" under the Act); *Melrose Park Nat'l Bank v. Carr*, 618 N.E.2d 839, 843 (Ill. App. Ct. 1993) (considering whether escrow agreement concerning funds for a proposed real estate transaction satisfied the statute of frauds). But Defendants have not cited—and the Court has not found— any authority stating that all escrow agreements are categorically required to be in writing, regardless of their underlying subject matter. Rather, a valid escrow agreement merely requires "an agreement between a grantor and a grantee as to the conditions of deposit, delivery of the deposited item to the escrowee, and communication of the agreed upon conditions to the

escrowee." *Melrose Park*, 618 N.E.2d at 843. In addition, Defendants do not contend that the subject matter underlying the escrow agreement is subject to the statute of frauds.

Defendants' reliance upon the century-old case *Main v. Pratt*, 114 N.E. 576 (Ill. 1916), is unavailing. In that case, the Illinois Supreme Court stated in passing that "[a]n escrow has been defined to be a written instrument which by its terms imports a legal obligation, and which is deposited by the grantor . . . with a stranger or third party to be kept by the depository until the performance of a condition or the happening of a certain event." *Id.* at 578. Defendants claim that the term "written instrument" in this sentence from *Main* is a mandate that all escrow agreements must satisfy the statute of frauds. But Defendants read *Main* for more than it is worth, and none of the other case law that Defendants cite supports the proposition that an escrow agreement must be in writing when its underlying subject matter is outside the statute of frauds. *See* Defs.' Mot. Dismiss at 13 (citing *Albrecht v. Brais*, 754 N.E.2d 396, 399 (Ill. App. Ct. 2001); *Merchants Nat'l Bank of Aurora v. Frazier*, 67 N.E.2d 611, 616 (Ill. App. Ct. 1946)). For these reasons, Plaintiff's failure to allege the existence of a written agreement does not doom its claim for breach of escrow agreement, and Defendants' motion to dismiss Count V is denied.

## IV.    Breach of Fiduciary Duty

Plaintiff alleges in Count III that Mensch and Bryan Cave undertook a fiduciary duty to hold the advance deposit in an escrow account unless and until the parties reached a final tour agreement. 3d Am. Compl. ¶ 77. Plaintiff further alleges that Mensch and Bryan Cave breached this fiduciary duty by releasing the funds without Plaintiff's approval or consent. *Id.* ¶ 78. Defendants have moved to dismiss Plaintiff's claim for breach of fiduciary duty on the grounds that (1) Plaintiff has failed to sufficiently allege the existence of a fiduciary duty, and (2) the claim is duplicative of Plaintiff's claim in Count V for breach of escrow agreement.

Defendants' first argument is without merit. Under Illinois law, a fiduciary relationship may arise either (1) "as a matter of law from the relationship of the parties" or (2) "based on the facts of a particular situation, such as a relationship where confidence and trust is reposed on one side, resulting in dominance and influence on the other side." *See Dahlin v. Evangelical Child & Family Agency*, 252 F. Supp. 2d 666, 669 (N.D. Ill. 2002). Further, as a matter of law, an escrow agent owes a fiduciary duty to act only according to the terms of the escrow instructions. *Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 393 (7th Cir. 2014); *Bescor, Inc. v. Chi. Title & Trust Co.*, 446 N.E.2d 1209, 1213 (Ill. App. Ct. 1983). Thus, by alleging that Mensch and Bryan Cave agreed to hold the advance deposit in escrow, Plaintiff has sufficiently alleged the existence of a fiduciary duty arising from the parties' escrow agreement. *See* 3d Am. Compl. ¶¶ 88–93.

By contrast, Defendants' second argument has legs. Courts have the authority to dismiss duplicative claims. *See Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014); *F.D.I.C. v. Saphir*, 2011 WL 3876918, at *9 (N.D. Ill. Sept. 1, 2011). Claims are considered duplicative, rather than merely pleaded in the alternative to one another, if they (1) involve the same operative facts, (2) involve the same injury, and (3) require proof of essentially the same elements. *Barrow*, 38 F. Supp. 3d at 920; *Beringer v. Standard Parking O'Hare Joint Venture*, 2008 WL 4890501, at *4–5 (N.D. Ill. Nov. 12, 2008).

As currently alleged, Plaintiff's breach of fiduciary duty claim is entirely duplicative of its claim for breach of escrow agreement. First, in support of both claims, Plaintiff alleges that the parties entered into an agreement whereby Mensch and Bryan Cave agreed to hold the advance deposit funds in escrow and to release the funds only if Plaintiff executed a final tour agreement with RSK and R. Kelly. 3d Am. Compl. ¶¶ 77, 89. Plaintiff further alleges that Defendants acted wrongfully by releasing the advance deposit from the escrow account even though no tour

agreement was ever finalized. *Id.* ¶¶ 78, 92. Plaintiff's claims for breach of fiduciary duty and breach of escrow agreement are thus based upon the same operative facts. They are also based upon the same alleged injury: Plaintiff's loss of the $500,000 advance deposit. *See id.* ¶¶ 80, 94.

Moreover, these two claims require proof of the same elements. Typically, fiduciary duty claims and breach of contract claims call for proof of different sets of elements. *Compare Wigod*, 673 F.3d at 560 (breach of contract), *with McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 809 (N.D. Ill. 2013) (breach of fiduciary duty). But in this case, as discussed *supra*, Plaintiff's breach of fiduciary duty claim rests solely upon the existence of a fiduciary duty arising from the parties' escrow agreement. Indeed, Plaintiff has neither alleged in its complaint nor argued in its response brief that anything other than the escrow agreement gave rise to Defendants' alleged fiduciary duty. *See* 3d Am. Compl. ¶¶ 77–81; Resp. at 7–8, ECF No. 69. Thus, to prove the existence and breach of a fiduciary duty in this case, Plaintiff must prove the existence and breach of an escrow agreement. As such, Plaintiff's breach of fiduciary duty claim—at least under the theory of fiduciary duty currently alleged—conflates with Plaintiff's breach of escrow agreement claim so as to "require proof of essentially the same elements." *Barrow*, 38 F. Supp. 3d at 920; *see also Beringer*, 2008 WL 4890501, at *7 (finding that breach of fiduciary duty claim was duplicative of breach of contract claim where, given the particular facts alleged, "the determination of whether a fiduciary duty was breached [was] identical with determining whether the contract for the provision of services was breached").

In sum, Plaintiff's claims for breach of fiduciary duty and breach of escrow agreement involve the same operative facts, involve the same injury, and require proof of essentially the same elements. These claims are therefore duplicative of one another. *Barrow*, 38 F. Supp. 3d at 920. The Court therefore dismisses Plaintiff's claim for breach of fiduciary duty. This is Plaintiff's

third attempt to amend its complaint. As the Court previously informed Plaintiff, no further amendment will be allowed. Accordingly, this dismissal shall be with prejudice. *See Tribble*, 670 F.3d at 761 (quoting *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009)) ("'District courts have broad discretion to deny leave to amend where there is . . . repeated failure to cure deficiencies.'").

## V. Negligence

Next, Plaintiff alleges in Count IV that Mensch and Bryan Cave were negligent because they failed to use reasonable care in holding Plaintiff's advance deposit in the escrow account. Defendants have moved to dismiss Plaintiff's negligence claim for running afoul of the *Moorman* doctrine.

In *Moorman Manufacturing Co. v. National Tank Co.*, the Illinois Supreme Court held that "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence," whereas the "remedy for economic loss . . . lies in contract." 435 N.E.2d 443, 449 (Ill. 1982). Although the *Moorman* doctrine originally applied to bar tort recovery for economic loss in the products liability setting, Illinois courts have since extended the *Moorman* doctrine to other settings where the parties' relationship is governed by contract and the plaintiff's injury stems from an alleged breach of the contract. *See Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 615 (7th Cir. 2001); *Collins v. Reynard*, 607 N.E.2d 1185, 1187–88 (Ill. 1992) (Miller, C.J., concurring).

Plaintiff's alleged injury in this case is a textbook example of economic loss: Plaintiff placed $500,000 into an escrow account controlled by Mensch, the parties agreed that the $500,000 would be released to RSK and R. Kelly only if a tour agreement was finalized, and Mensch and Bryan Cave released the $500,000 even though this condition was not met. 3d Am.

Compl. ¶¶ 82–83.  Plaintiff suffered no personal or property damage, and its injury stems entirely from Defendants' alleged breach of the parties' escrow agreement.  *See id.*  As such, the *Moorman* doctrine bars Plaintiff from pursuing a negligence claim in seeking a remedy for this economic loss.  *See Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926–28 (7th Cir. 2003) (affirming dismissal of negligence claim as barred under *Moorman* doctrine where plaintiff's injury arose from breach of contract terms).

Plaintiff nevertheless contends that it should be permitted to proceed with its negligence claim on the ground that it falls within an exception to the *Moorman* doctrine.  Illinois courts recognize exceptions to the *Moorman* doctrine where the plaintiff's damages are proximately caused by either (1) a defendant's intentional false representation (i.e., fraud), or (2) a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.  *See id.* at 927; *In re Ill. Bell Switching Station Litig.*, 641 N.E.2d 440, 443–44 (Ill. 1994).[6]

Plaintiff is precluded as a matter of law from arguing the fraud exception.  Although this exception may permit recovery for economic loss under a theory of intentional tort, it does not permit recovery for economic loss under a negligence theory.  *Prescott v. Argen Corp.*, No. 13 CV 6147, 2014 WL 4638607, at *8 (N.D. Ill. Sept. 17, 2014) (holding that fraud exception to *Moorman* doctrine did not apply to negligence claim because "[n]egligence is by definition unintentional [and] therefore cannot constitute fraud, which is by definition intentional"); *Ibarolla v. Nutrex Research, Inc.*, 2012 WL 5381236, at *6 (N.D. Ill. Oct. 31, 2012) (citing

---

[6]     Illinois courts recognize a third exception to the *Moorman* doctrine where the plaintiff sustained personal injury or property damage resulting from a sudden or dangerous occurrence. *See Am. United Logistics*, 319 F.3d at 927.  This third exception is not at issue in the present case.

*Olson v. Hunter's Point Homes, LLC*, 964 N.E.2d 60, 64 (Ill. App. Ct. 2012)) ("[T]he second exception to the *Moorman* doctrine cannot apply to a negligence claim.").

Plaintiff's reliance on the "negligent misrepresentation" exception is likewise unavailing. It is true that legal practitioners, such as Mensch and Bryan Cave, may sometimes qualify as individuals in the business of supplying information for others for purposes of this exception. *Cf. Collins v. Reynard*, 607 N.E.2d 1185, 1186–87 (Ill. 1992) (finding exception to *Moorman* doctrine where plaintiff brought a legal malpractice claim under a tort theory). But generally speaking, an attorney owes a professional duty only to his client, not to nonclient third parties. *Jewish Hosp. of St. Louis, Mo. v. Boatmen's Nat'l Bank of Belleville*, 633 N.E.2d 1267, 1275 (Ill. App. Ct. 1994). Under limited circumstances, a nonclient third party may maintain a negligence action against an attorney if the third party is able to prove that the primary purpose and intent of the attorney-client relationship was to benefit or influence the third party. *Id.* Plaintiff, however, has not alleged that Mensch's or Bryan Cave's relationship with their clients, RSK and R. Kelly, was formed for the primary purpose of benefiting or influencing Plaintiff. Nor has Plaintiff alleged that Mensch or Bryan Cave made a negligent misrepresentation. Accordingly, Plaintiff has not pleaded sufficient facts to fall under the negligent misrepresentation exception to the *Moorman* doctrine.

For these reasons, Defendants' motion to dismiss Plaintiff's negligence claim in Count IV as barred by the *Moorman* doctrine is granted. Given Plaintiff's allegations of the nature of its relationship with Defendants, amendment would likely be futile. Count IV is therefore dismissed with prejudice. *Tribble*, 670 F.3d at 761.

## VI.     Quasi-Contractual Relief

As an alternative to its claim in Count V for breach of the escrow agreement, Plaintiff has pleaded an unjust enrichment claim against all Defendants in Count VI, as well as a promissory estoppel claim against Mensch and Bryan Cave in Count VII.  Defendants move to dismiss these quasi-contractual claims on the ground that Plaintiff did not properly plead them in the alternative to its breach of contract claim

Under the federal notice pleading standards, a party generally may plead claims in the alternative, even if the claims are inconsistent.  *See* Fed. R. Civ. P. 8(d)(2); *Telefonix, Inc. v. Response Eng'g, Inc.*, No. 12 C 4362, 2012 WL 5499437, at *5–6 (N.D. Ill. Nov. 13, 2012).  Under Illinois law, however, "a plaintiff may not pursue a quasi-contractual claim where there is an enforceable, express contract between the parties."  *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003); *see also Prodromos v. Poulos*, 560 N.E.2d 942, 948 (Ill. App. Ct. 1991).  Accordingly, courts applying Illinois law have held that where a claim of unjust enrichment or promissory estoppel incorporates paragraphs alleging an express contract between the parties, the claim cannot proceed.  *See, e.g.*, *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 WL 1886440, at *15–16 (N.D. Ill. May 22, 2012); *Sharrow Grp. v. Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004).

In Count V, Plaintiff alleges that it "entered into a valid, enforceable escrow agreement" with Mensch and Bryan Cave.  3d Am. Compl. ¶ 89.  Plaintiff has incorporated this allegation by reference in Counts VI and VII.  *Id.* ¶ 95 (incorporating paragraphs 1 through 94 by reference); *id.* ¶ 104 (incorporating paragraphs 1 through 103 by reference).  Thus,  in Counts VI and VII, Plaintiff has alleged the existence of a contract while simultaneously alleging quasi-contractual claims.  This deficiency in the pleadings warrants the dismissal of Counts VI and VII.  *See Telefonix*, 2012 WL

5499437, at *5–6; *Nathan*, 2012 WL 1886440, at *15–16; *Team Impressions Inc. v. Chromas Techs. Canada, Inc.*, No. 02 C 5325, 2003 WL 355647, at *4 (N.D. Ill. Feb. 18, 2003). Accordingly, Counts VI and VII are dismissed. This is Plaintiff's third attempt to amend its complaint. As the Court previously informed Plaintiff, no further amendment will be allowed. Accordingly, this dismissal shall be with prejudice. *See Tribble*, 670 F.3d at 761.

## VII.     Motion to Strike Attorney's Fees

Finally, Defendants argue that Plaintiff's request for attorney's fees should be stricken from the complaint. Because jurisdiction of this case is based on diversity of citizenship, the Court must look to Illinois state law to resolve this issue. *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1006 (7th Cir. 1989). Under Illinois law, attorney's fees and the ordinary expenses of litigation are not allowable to the successful party absent a statute or contractual agreement. *Id.*; *Riley Acquisitions, Inc. v. Drexler*, 946 N.E.2d 957, 967 (Ill. App. Ct. 2011) (citing *Kerns v. Engelke*, 390 N.E.2d 859, 865 (Ill. 1979)). Plaintiff has not identified any such statute or contractual agreement and thus is not entitled to recover attorney's fees. *See, e.g.*, *Batteast Constr. Co. v. Pub. Bldg. Comm'n of Chi.*, 195 F. Supp. 2d 1045, 1052 (N.D. Ill. 2001) (striking request for attorney's fees under Illinois law). Defendants' motion to strike Plaintiff's request for relief in the form of attorney's fees is therefore granted.[7]

---

[7]     Plaintiff asserts that a party may recover attorney's fees where defendants act in bad faith, vexatiously, wantonly, or oppressively. But the cases Plaintiff cites in support of this assertion address the availability of attorney's fees under federal common law, rather than Illinois law, and they are thus inapplicable to this case. *See* Resp. at 14 (citing *Peterman v. United States*, No. 13-3320, 2014 WL 1345938, at *6 (C.D. Ill. Apr. 4, 2014); *Stive v. United States*, 366 F.3d 520, 521 (7th Cir. 2004)).

## Conclusion

For the reasons stated herein, Defendants' motions to dismiss [58] [60] are granted in part and denied in part.  Counts I, III, IV, VI, and VII of the Third Amended Complaint are dismissed with prejudice.  Defendants' motion to strike Plaintiff's request for attorney's fees is granted.  In all other respects, Defendants' motions to dismiss are denied.

**IT IS SO ORDERED.**                **ENTERED   4/13/17**

_____
**John Z. Lee**
**United States District Judge**