IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SWERVO ENTERTAINMENT GROUP, LLC, a Minnesota limited liability company, | ) ) ) |
| Plaintiff, | ) Case No. 16-cv-4692 ) |
| v. | ) Judge John Z. Lee ) |
| LINDA S. MENSCH, an individual, LINDA S. MENSCH, P.C., an Illinois corporation, BRYAN CAVE, LLP, a Missouri limited liability partnership, RSK ENTERPRISES, LLC, a Delaware limited liability company, and ROBERT S. KELLY p/k/a R. Kelly, an individual, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Swervo Entertainment Group, LLC ("Plaintiff") filed this lawsuit against Defendants Linda S. Mensch and Linda S. Mensch, P.C. (collectively, "Mensch"), as well as Bryan Cave, LLP ("Bryan Cave"), RSK Enterprises, LLC ("RSK"), and Robert S. Kelly ("R. Kelly"). Plaintiff alleges that, while it was in negotiations with RSK and R. Kelly (collectively, "the Kelly Defendants") over the terms of a proposed artist tour agreement, Mensch requested an advance deposit in the sum of $500,000 as a gesture of good faith in exchange for continuing negotiations. Negotiations eventually broke down, and the advance deposit was never returned.

Mensch and Bryan Cave have moved for summary judgment as to Plaintiff's two remaining claims for promissory fraud and breach of contract, contending that Plaintiff lacks standing to seek the return of the $500,000, and that the undisputed evidence shows that Mensch made no promises to Plaintiff about the handling of the funds. Plaintiff has cross-moved for summary judgment as to its breach of contract claim. For the reasons stated herein, the Court grants Bryan Cave's

motion, grants Mensch's motion, denies Plaintiff's motion, and enters final judgment in favor of Bryan Cave, Mensch, and the Kelly Defendants.

**Factual & Procedural Background[1]**

Plaintiff is a Minnesota limited liability company with its principal place of business in Minnesota. Def. Bryan Cave's LR 56.1(a) Stmt. of Facts ("Bryan Cave SOF") ¶ 1, ECF No. 143. Plaintiff is one of approximately 100 subsidiaries of Swervo Development Corp. ("Swervo Development"), a non-party to this litigation. *Id.* ¶ 13. Another of Swervo Development's subsidiaries is City Center Ventures, LLC ("City Center"), also a non-party. Pl.'s LR 56.1(b) Resp. Bryan Cave SOF ¶ 48, ECF No. 168. Nedal Yasuf Abdul-Hajj, known as Ned Abdul ("Abdul"), owns 100% of Swervo Development, and is also Plaintiff's sole member. *Id.* ¶¶ 2, 14.

Linda S. Mensch is a lawyer who was formerly of counsel at the firm Bryan Cave. *Id.* ¶ 17. She also had her own firm, Linda S. Mensch, P.C. *Id.* Mensch formerly represented the music artist R. Kelly as well as RSK, a Delaware limited liability company of which R. Kelly is the sole member. *Id.* ¶¶ 9, 18.

Between the summer of 2015 and early 2016, Mensch communicated with a music promoter, Artie Pabon, about the possibility of Pabon promoting R. Kelly's upcoming 2016 concert tour. *Id.* ¶ 20; Pl.'s LR 56.1(a) Stmt. of Facts ("Pl.'s SOF") ¶¶ 10, 15, ECF No. 150. Originally, the negotiations were between Mensch and Pabon in his capacity as representative of a different company, The Commission Presents, LLC ("TCP"). Bryan Cave SOF ¶ 20; Pl.'s SOF ¶ 15. But in the summer of 2015, Pabon reached out to Abdul to see if he was interested in investing in the tour. Pl.'s LR 56.1(b) Resp. Bryan Cave SOF ¶¶ 25–28. Eventually these talks evolved into an agreement that Plaintiff would replace TCP as the promoter for R. Kelly's 2016

---

[1] The following facts are undisputed or deemed admitted except where otherwise noted.

tour. *Id.* ¶ 28. Pabon continued to "facilitat[e]" the negotiations with Mensch and exchanged draft tour agreements with her. *Id.* ¶¶ 29, 32–33, 41. Abdul never spoke directly with Mensch, but rather worked through Pabon. *Id.* ¶ 77.

The negotiations between Pabon and Mensch included discussion of a $500,000 advance payment to be made to RSK. Pl.'s SOF ¶ 18; Pl.'s LR 56.1(b) Resp. Bryan Cave SOF ¶ 39. On January 15, 2016, Pabon emailed Mensch, stating that "[f]or internal reasons," he was going to "change the tour agreement to [his] new entity SWERVO ENTERTAINMENT LLC." Bryan Cave SOF ¶ 44. He stated that the wire payment of $500,000 would be "out first thing" that morning, and asked Mensch to confirm wire information for an account titled "Linda S. Mensch, P.C. RSK Client Escrow Acc[ount]," held at Lakeside Bank. *Id.* ¶ 43; Pl.'s SOF ¶ 28. Mensch confirmed the information, which Pabon forwarded to Abdul. Bryan Cave SOF ¶ 43.

The same day, City Center wired $500,000 to Mensch's client escrow account. Bryan Cave SOF ¶ 48; *see* Pl.'s LR 56.1(b) Resp. Bryan Cave SOF ¶ 48; Bryan Cave's Exhibit 5-I, Lakeside Bank Statement, ECF No. 143-1. Abdul later explained that "the reason it came out of [City Center] is because at that point [Plaintiff] was a new entity that we created just for this, and it didn't have an account yet." Pl.'s LR 56.1(b) Resp. Bryan Cave SOF ¶ 48.

Plaintiff contends, and Defendants dispute, that Mensch had agreed to hold the funds in escrow rather than releasing them to RSK. *See* Pl.'s SOF ¶¶ 18–28; Bryan Cave SOF ¶¶ 49–53. In any event, Mensch disbursed most of the $500,000 to RSK the same day she received the wire payment and disbursed the rest of the funds later that month. Pl.'s SOF ¶¶ 33–35. Negotiations between Plaintiff and Defendants with respect to the tour-promotion agreement subsequently broke down, and Plaintiff did not end up promoting R. Kelly's 2016 concert tour. *Id.* ¶¶ 47, 51, 61. But RSK spent the $500,000 on expenses and did not return it. *Id.* ¶¶ 62, 65.

Plaintiff brought this lawsuit in April 2016. In April 2017, the Court dismissed with prejudice Plaintiff's claims for conversion, breach of fiduciary duty, negligence, unjust enrichment, and promissory estoppel. Mem. Op. & Order of April 13, 2017, ECF No. 79. In October 2017, the Court reinstated Plaintiff's claim of unjust enrichment as to the Kelly Defendants. Order of October 16, 2017, ECF No. 103. Accordingly, Plaintiff's remaining claims are for promissory fraud as to Mensch and Bryan Cave (Count II), breach of the purported escrow agreement as to Mensch and Bryan Cave (Count V), and unjust enrichment as to the Kelly Defendants (Count VI). Before the Court are Mensch's and Bryan Cave's motions for summary judgment as to Counts II and V, and Plaintiff's motion for summary judgment as to Count V. Neither Plaintiff nor the Kelly Defendants have filed dispositive motions as to Count VI.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The evidence considered "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014). The Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

Moreover, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 322. Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing there are disputed material facts that must be decided at trial. *See id.* at 321–22.

## Analysis

Bryan Cave and Mensch contend that Plaintiff lacks Article III standing to pursue its remaining claims. They also argue that the undisputed evidence shows that Mensch never promised Plaintiff that she would hold the $500,000 in escrow, and thus they are entitled to summary judgment on Plaintiff's claims of promissory fraud and breach of the purported escrow agreement. Plaintiff contends that the undisputed evidence shows that Mensch *did* agree to hold the funds in escrow, and thus it is entitled to summary judgment for her breach of that agreement.

Article III standing requires the plaintiff to show a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 678 (2016) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Article III "injury-in-fact" is a concrete and particularized, actual or imminent invasion of a legally protected interest. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing standing, and the elements of standing must be supported with the quantum of evidence required at each successive stage of litigation." *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 939 (7th Cir. 2016). At

5

the summary judgment stage, the plaintiff "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts," *id.*, indicating a "perceptible harm," *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017) (citing *Lujan*, 504 U.S. at 566–67). "[I]f the [litigant does] not have standing, the Court is without authority to consider the merits of the action." *Swan v. Bd. of Educ. of City of Chi.*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013).

Bryan Cave and Mensch contend that Plaintiff lacks standing to enforce any promises Mensch may have made about her handling of the $500,000, since the funds did not actually come from Plaintiff. Instead, they point out, City Center, which is a non-party and another subsidiary of Plaintiff's parent Swervo Development, provided the funds. In response, Plaintiff argues that "[t]he money belonged to [Plaintiff] regardless of whether the transfer originated from a bank account in the name of a different entity." Pl.'s Resp. Defs.' Mots. Summ. J. at 4, ECF No. 164.

A corporation cannot sue to remedy harm suffered solely by a separate legal entity. *See Fed. Ins. Co. v. Parello*, 767 F. Supp. 157, 160 (N.D. Ill. 1991). Rather, the "injury in fact" requirement necessitates that any injury be *personal* to the plaintiff, absent grounds to assert derivative or third-party standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'") (quoting *Lujan*, 504 U.S. at 560). Here, because City Center, and not Plaintiff, paid the $500,000 to Mensch, Plaintiff has suffered no personal harm.

Plaintiff's argument to the contrary—that the money "belonged" to Plaintiff and only went through City Center because Plaintiff did not yet have a bank account—is a *non sequitur*. If Plaintiff did not yet have a bank account, it did not have any money, nor did it provide that money to City Center or to Defendants. Rather, as Plaintiff has stated, "Abdul ordered the wire transfer as President and sole owner of [Plaintiff]," and the money came "out of" City Center because

Plaintiff "was a new entity . . . and it didn't have an account yet." Pl.'s LR 56.1(b) Resp. Bryan Cave SOF ¶ 48. The only reasonable inference from this statement is that the $500,000 bypassed Plaintiff entirely, and either came out of City Center's own coffers or indirectly from Abdul himself. In either scenario, *Plaintiff* has suffered no harm and therefore has no injury in fact. *See Spokeo, Inc.*, 136 S. Ct. at 1548.

Plaintiff's only other argument in support of standing is that "the money indisputably belonged to [Plaintiff] as the party negotiating the Tour Agreement." Pl.'s Resp. Defs.' Mots. Summ. J. at 5. But the Tour Agreement—which was never executed—is not at issue in this case. Rather, the purported escrow agreement is the source of Plaintiff's claims against Bryan Cave and Mensch. More importantly, regardless of whether Plaintiff negotiated or entered into any agreement to provide $500,000 to Mensch to hold in escrow, *Plaintiff did not do so.* Instead, City Center paid. Plaintiff points to no law that would allow it to recover money spent by a different corporation, regardless of what it may have intended or promised to do itself.

Plaintiff does not say that it is obligated in some way to repay the $500,000 spent by City Center, that it paid City Center in a form that did not require use of a bank account, or that it suffered any other indirect financial harm as a result of Mensch's handling of City Center's money.[2] Accordingly it has waived such an argument. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Without such facts, this is not a case in which Plaintiff suffered harm derivative to that experienced by City Center, *see G&S Holdings LLC v. Continental Cas. Co.*, 697

---

[2] The only evidence Plaintiff points to in support of the notion that the money somehow came from Plaintiff instead of City Center is an excerpt from Abdul's deposition, where he stated that "Swervo Entertainment is the one that sent the money. Swervo Entertainment was the one who was on the contract."). Pl.'s LR 56.1(b) Resp. Bryan Cave SOF ¶ 48. But that statement is taken out of context. At that point in his deposition, Abdul was responding to a question concerning whether Mensch understood the nature of the relationship between Pabon and Plaintiff; he was not discussing the source of the wire transfer. *See id.*; Bryan Cave's Ex. 2, Abdul Dep. at 57:9–11, ECF No. 143-1.

7

F.3d 534, 539–40 (7th Cir. 2012); instead, Plaintiff has not shown that it has suffered *any* "perceptible" harm, and lacks Article III standing. *Gubala*, 846 F.3d at 911.[3]

Additionally, although Plaintiff's claim against the Kelly Defendants is not the subject of the present motions, the Court notes that it arises out of the same payment, yet there is not a scintilla of evidence to suggest that the $500,000 was Plaintiff's.[4] Because the Court has an "independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it," the Court addresses the effect of its present decision on Plaintiff's remaining claim against the Kelly Defendants. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see Collier v. SP Plus Corp.*, 889 F.3d 894, 895–96 (7th Cir. 2018) (*per curiam*) (explaining that Article III standing is an element of federal subject-matter jurisdiction). The Court concludes that Plaintiff similarly lacks standing to pursue its unjust-enrichment claim against the Kelly Defendants, as that claim seeks the return of money that, as has been established, Plaintiff did not pay. Accordingly, the Court dismisses Plaintiff's claims against the Kelly Defendants for lack of standing.

---

[3] Because the Court concludes that Plaintiff lacks standing, the Court does not address the parties' substantive arguments with respect to Plaintiff's claims. *See Swan*, 956 F. Supp. 2d at 918.

[4] Plaintiff alleges that "[o]ne or more of the Defendants still has possession of Plaintiff's $500,000.00 deposit, or has used the Advance Deposit for his/its benefit. . . . Plaintiff has suffered damages and is entitled to judgment for unjust enrichment against the Defendant or Defendants that unjustly benefited from the Advance Deposit funds." 3d Am. Compl. ¶¶ 99, 103, ECF No. 52.

**Conclusion**

For the reasons provided, the Court denies Plaintiff's motion for summary judgment, grants Bryan Cave's and Mensch's motions for summary judgment, and dismisses Plaintiff's claims against Bryan Cave, Mensch, and the Kelly Defendants. As the time to amend pleadings and join parties has long passed, *see* ECF No. 80, the Court will enter a judgment in this case, and this case is hereby terminated.

**IT IS SO ORDERED.**                ENTERED   3/18/19

_____

**John Z. Lee**
**United States District Judge**